UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KRISTIN WILLIAMS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:12-cv-313-TAB-TWP |
| | ) | |
| BALL STATE UNIVERSITY, | ) | |
|     Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.   Introduction**

Plaintiff Kristin Williams is a former non-tenured contract instructor at Ball State University's Department of Criminal Justice and Criminology ("CJC"). In this capacity, Plaintiff assisted with a juvenile justice project and also taught some classes for the CJC professor who headed up the project. It is undisputed that Plaintiff's position was eliminated due to lack of funding. What happened in the wake of this funding shortfall, however, prompted Plaintiff to allege gender discrimination.

Plaintiff's discrimination allegations are two-fold. First, in Count 1 Plaintiff contends that although she lost her job, four tenured male professors working on the same juvenile justice project kept their jobs with the university after the project was discontinued. Second, in Count 2 Plaintiff contends that CJC Department Chair Dr. James E. Hendricks hired a male instructor for a part-time distance learning position without even considering Plaintiff for the position. In Plaintiff's view, being treated differently than tenured male professors and being overlooked for a distance learning position that was given to a male smacks of gender discrimination.

1

Defendant, on the other hand, believes that Plaintiff's claims do not even raise a genuine issue for trial, and filed a motion for summary judgment seeking dismissal of this case. [Docket No. 23.]

The Court agrees with Defendant that summary judgment is appropriate as to Plaintiff's first claim. The problem with this discriminatory discharge claim is that Plaintiff, a non-tenured contract employee, compares herself to the tenured male professors who kept their jobs when the project funding dried up. These tenured comparators are not similarly situated to Plaintiff and therefore provide no basis for asserting gender discrimination. As a result, summary judgment is appropriate as to Count 1 of Plaintiff's complaint, asserting gender discrimination in her termination.

The same cannot be said for Count 2. As to this failure-to-hire claim, Defendant asserts that Hendricks did not consider Plaintiff for the distance learning position because Hendricks thought Plaintiff was pursuing her Ph.D. and would not have been interested in a short-term, low-paying job. The problem with Defendant's argument is that, for summary judgment purposes, the evidence shows that Plaintiff told Hendricks she wanted to remain at the university, that pursuing a Ph.D. was just her backup plan, and that she would have needed to sell her house in order to enroll in such a program. As a result, the fact that Hendricks failed to even mention the opening to Plaintiff and instead affirmatively contacted and co-selected a male for the position creates genuine issues for trial.[1]

For these reasons, as more fully set forth below, Defendant's motion for summary

---

[1] Defendant's reply brief takes issue with certain evidence Plaintiff submitted. However, because this order does not rely on this disputed evidence, these evidentiary challenges are not addressed.

2

judgment [Docket No. 23] is granted with respect to Count 1 (discriminatory discharge) and denied with respect to Count 2 (discriminatory failure-to-hire).

## II. Discussion

### *A. Discriminatory discharge claim*

Plaintiff relies on the indirect method of proof to establish a prima facie case. Under the indirect method, a prima facie case requires evidence that "(1) she is a member of a protected class, (2) her job performance met [the employer's] legitimate expectations, (3) she suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff." *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). Once a prima facie case is established, there is a presumption of discrimination and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. *Id.* "When the employer does so, the burden shifts back to the plaintiff, who must present evidence that the stated reason is a 'pretext,' which in turn permits an inference of unlawful discrimination." *Id.*

For the purposes of summary judgment, Defendant does not contest that Plaintiff satisfies the first three criteria of a prima facie case, but argues that Plaintiff cannot show a similarly situated male was treated more favorably. Whether an employee is similarly situated is typically a question for the fact finder, and summary judgment is appropriate only when "no reasonable fact-finder could find that plaintiffs have met their burden on the issue." *Coleman*, 667 F.3d at 846–47. "In the usual case a plaintiff must at least show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or

the employer's treatment of them." *Id.* at 847 (internal quotation marks omitted). In *Coleman*, the Seventh Circuit loosened what had become a somewhat more rigid comparator standard and compared coworkers with different immediate supervisors, job titles, and duties. *Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 676 (7th Cir. 2012) (citing *Coleman*, 667 F.3d at 847–52)). While *Coleman* recognized that "employees need not be carbon copies, nor must they be 'identical in every conceivable way' in order to provide a useful comparator," the distinctions between comparators must not be "material in that they go to the heart of why [Plaintiff] received different treatment." *Naficy v. Ill. Dep't of Human Sevs.*, 697 F.3d 504, 512 (7th Cir. 2012).

Plaintiff claims that three tenured male professors and a tenured male associate professor in the CJC Department were employed with project funds and were not terminated when the grant-funded program ended. [Docket No. 25 at 11.] These tenured professors are Mike Brown, Taiping Ho, Greg Morrison, and Jerome McKean. [Docket No. 25-19 at 3.] Typically, comparing a non-tenured contract instructor to tenured professors is an insufficient comparison. *Abuelyaman v. Ill. State Univ.*, 667 F.3d 800, 811 (7th Cir. 2011); *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 626 (7th Cir. 2006). For example, tenured professors are subject to different standards, do not have the same experience, and are typically more essential to the university. *Keri*, 458 F.3d at 626; *see also Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 566–67 (1972) (recognizing that tenured professors have a protected property interest in their employment while non-tenured professors do not). Plaintiff fails to supply any additional information about these professors to support the conclusion that they are comparable. Plaintiff fails to state whether the tenured professors' experience and education are similar, the type of

employment agreement they had with the university, or other information to show that despite being tenured the professors are sufficient comparators. [Docket No. 25 at 11-12.] Because Plaintiff fails to identify a similarly situated male who was treated more favorably than Plaintiff, her discriminatory discharge claim fails as a matter of law.

### B. Failure-to-hire claim

Plaintiff also proceeds under the indirect method of proof for her failure-to-hire claim. A prima facie case of sex discrimination under the indirect method requires Plaintiff to show she (1) is female, (2) applied for an open position, (3) was qualified, (4) was rejected, and (5) Defendant filled the position with a person outside Plaintiff's protected class who was not better qualified, or left the position open. *Rudlin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 724 (7th Cir. 2005); *Blise v. Antaramian*, 409 F.3d 861, 866 (7th Cir. 2005). Once Plaintiff establishes a prima facie case, a presumption of discrimination arises, and Defendant "'must articulate a legitimate and non-discriminatory reason for the employment action' in question." *Rudlin*, 420 F.3d at 724. If Defendant articulates such a reason, then Plaintiff must show that the reason was pretextual. *Id.*

Plaintiff contends that she should have been considered for two positions that were eventually filled. The first position was filled by Ashley Aikens, a female, who taught CJC 102 and CJC 212. [Docket No. 25 at 6.] Because this position was filled by a female, Plaintiff's gender-based failure-to-hire claim necessarily fails for this position. *See Rudlin*, 420 F.3d at 724 (requiring that a person outside the protected class be hired).

The second position for which Plaintiff claims she should have been considered was with the Department of Online and Distance Education ("ODE"). [Docket No. 25 at 6.] This job was

located at Hamilton Southeastern High School and was offered to Joshua Ross, a male instructor. [*Id.*] Defendant, however, contends that Plaintiff never applied for the position nor was diligent in pursuing the position, and therefore Plaintiff cannot establish a prima facie case. The Court disagrees.

By November 2010, Plaintiff learned that her employment would be discontinued at the end of her contract term and she began looking for a new position at the university. Hendricks told Plaintiff that there might be possible work available with ODE and suggested that she contact Staci Davis, the director of ODE. [Docket No. 24 at 15.] On November 11, 2010, Plaintiff sent an email to Davis stating:

> Hendricks informed me . . . that I should speak with you about opportunities within the Distance Education Program. He mentioned about CJ going online and then also something about Noblesville and high school classes? If there is a potential need for me, I would really like to discuss this with you.

[Docket No. 24-15.] As of November 2010, no opportunities existed and Davis communicated that to Plaintiff. [*Id*.]

In January 2011, a similar job opportunity became available at Hamilton Southeastern Schools. [Docket No. 24 at 16.] Dr. James C. Hendrix in the ODE Department informed Dr. James E. Hendricks of the CJC Department about the opportunity, and Hendricks asked his colleagues for recommendations. Dr. Bryan Byers recommended Joshua Ross for the position and Ross was eventually hired. [*Id.* at 17.] Plaintiff was not considered for the position.

Normally, Defendant would be correct that failure to exercise diligence and formally apply for a position would entitle Defendant to summary judgment. *See Mitchell v. Old Nat'l Bank*, No. 3:07-CV-0167-RLY-WGH, 2010 WL 561804, at *6 (S.D. Ind. Feb. 9, 2010) ("Given . . . that the opening was indeed published in accordance with the policy, it was essential for

Plaintiff to show she actually posted for the job if she wanted to create an inference that illegal sex discrimination played a part in the decision . . . ."). However, nothing in the record suggests that the position was formally posted so that Plaintiff could have known about the position or could have applied. Rather, the record reflects that Ross' name was obtained through a back channel of recommendations elicited by Hendricks, the same person with whom Plaintiff discussed a substantially similar position approximately two months earlier. [Docket No. 24 at 7–8.] Moreover, Hendricks told Plaintiff he would keep her informed of jobs within the university. [Docket No. 25-1 at 63.] For purposes of establishing that Plaintiff applied for the position, these facts are sufficient to raise a genuine issue of material fact and make a prima facie showing.[2]

Since Plaintiff has established a prima facie case, "'a presumption of discrimination arises, and the employer must articulate a legitimate and non-discriminatory reason for the employment action' in question." *Rudlin*, 420 F.3d at 724. Defendant contends that Hendricks did not consider her for the position because "she was applying for Ph.D. programs in other states and he didn't think she would abandon her goal of advanced degree for a short-term job that paid very little." [Docket No. 28 at 14.] This is a legitimate and non-discriminatory reason, and therefore Plaintiff must show that this reason is pretextual. *Rudlin*, 420 F.3d at 724.

To establish pretext, Plaintiff "must show that (1) the employer's non-discriminatory reason was dishonest and (2) the employer's true reason was based on a discriminatory intent." *Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010). Plaintiff claims Defendant's

---

[2] For purposes of summary judgment, Defendant does not challenge that Plaintiff is female, was qualified, was rejected, or that Defendant filled the position with a person outside the protected class.

asserted reason is pretextual because she made it clear to Hendricks that "Ph.D. programs were her backup plan, that she had to sell her house before she could enroll in such a program, and her preference was to stay at Ball State." [Docket No. 25 at 8, 14 (citing Dep. Exh. P). Exhibit P, however, does not support Plaintiff's position, which is an email to Dr. Mike Brown, who was not involved with hiring Ross. Rather, Drs. Hendricks and Hendrix made the hiring decision. [Docket No. 24 at 7–8.]

Nevertheless, other aspects of the record are sufficient to raise a genuine issue as to pretext. Plaintiff's affidavit states that she "told Dr. Hendricks, and others within the department, that I was looking into Ph.D. programs as a backup plan, but that I would need to sell a house in order to enroll in such a program." [Docket No. 25-15 at 3.] Plaintiff's affidavit is consistent with her deposition, which states that in August 2010 she asked Hendricks whether there was "any chance of me staying at BSU because if not I have a house to sell and Ph.D. programs to try to get into for next fall." [Docket No. 24-1 at 53.] Although Plaintiff began soliciting letters of recommendation and preparing to apply for Ph.D. programs as early as August [*id.*], Plaintiff continued to discuss employment opportunities with Hendricks, including the ODE position in November 2010. [Docket No. 24 at 7.] Thus, a reasonable jury could conclude that despite Plaintiff's interest in Ph.D. programs, Hendricks knew that Plaintiff remained interested in obtaining employment at the university—specifically a part-time position with ODE—and therefore the purported legitimate reason was dishonest. *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–48 (2000) ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.").

Defendant states in its reply brief that there is "no evidence" that Plaintiff told Hendricks her aspiration to pursue a Ph.D. was a backup plan. [Docket No. 28 at 15.] In light of Plaintiff's deposition and affidavit testimony from the record cited above, Defendant's statement is erroneous. There is ample evidence in the record supporting Plaintiff's contention that pursuing a Ph.D. program was a backup plan, and that Plaintiff had a house she needed to sell in order to enroll in such a program. [Docket No. 25-15 at ¶ 14; Docket No. 25-1 at 53, 91; Docket No. 24-10.] In fact, Plaintiff testified that she had talked with Hendricks several times about the fact that she probably would not be able to sell her house. [Docket No. 25-1 at 91.] Despite all this, it somehow never dawned on Hendricks to even mention the job opportunity at Hamilton Southeastern Schools to Plaintiff even though he said he would keep her informed. [Docket No. 25-1 at 63.]

Meanwhile, Hendricks did mention the position to members of his department.[3] And when no one in the department expressed interest, he took the affirmative step of contacting a potential male candidate, Joshua Ross, soliciting his resume, interviewing him, and co-selecting him for the position. Viewing the evidence in Plaintiff's favor means that Hendricks did all this despite knowing that Plaintiff preferred to stay at the university and would have had to sell her house to pursue a Ph.D. The evidence further shows that while Hendricks talked to Dean Michael Maggiatto about additional funding for a contract position, the only actual job lead that Hendricks provided to Plaintiff was with Staci Davis of ODE, which was a dead end.

A jury could reasonably question why Hendricks, presumably an intelligent person given

---

[3] Although one of the faculty members was a female assistant professor [Docket No. 24 at 7], this fact is not sufficient to push Defendant's motion over the summary judgment threshold.

that he served as CJC Department Chair, never considered Plaintiff for the position, for which he sought out and co-selected a male. Perhaps a jury would believe that Hendricks thought Plaintiff was busily pursuing her Ph.D. and that she would not have given the position any consideration at all. But this is squarely a jury issue.

Defendant also asserts that even if it had considered Plaintiff for the position, it would have concluded that Ross was better qualified than Plaintiff. As discussed in *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006), "qualifications evidence may suffice, at least in some circumstances, to show pretext." *See also Millbrook v. IBP, Inc.*, 280 F.3d 1169 (7th Cir. 2002) ("[T]here can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue."). Defendant emphasizes that Plaintiff testified that it is fair to say that Ross was at least as qualified as her [Docket No. 25 at 15], and therefore any qualification-based argument fails.

The Court agrees that Plaintiff has not shown pretext through qualification evidence. However, this is not the typical case where the employer asserts that it hired the better qualified applicant, and therefore Plaintiff has not attempted to show pretext by way of qualification evidence. Rather, Hendricks' asserted reason for not considering Plaintiff is that he did not think she would be interested in the position. [Docket No. 28 at 14.] As discussed, there is sufficient evidence to lead a reasonable jury to conclude that this explanation is pretextual. For purposes of summary judgment, since Hendricks selected Ross without regard to Plaintiff's qualifications, Defendant cannot now overcome a potentially dishonest explanation by asserting that even if it had considered Plaintiff she would not have been better qualified. *See Fischer v. Avanade, Inc.*, 519 F.3d 393, 407 (7th Cir. 2008) ("Furthermore, the first reason Evans offers in his declaration

for not hiring Fischer—that Evans did not know if she was interested in leaving her current position—borders on the illogical if Evans is answering, as Defendant maintains, why he would not have hired Fischer even if she had in fact expressed interest in the position."). Accordingly, there is sufficient evidence to show pretext, and Plaintiff's failure-to-hire claim for the ODE position survives summary judgment.

### III. Conclusion

Defendant's motion for summary judgment [Docket No. 23] is granted in part and denied in part. Defendant's motion for summary judgment is granted as to Plaintiff's discriminatory discharge claim, and Count 1 is dismissed with prejudice. However, Defendant's summary judgment motion is denied as to Plaintiff's failure-to-hire claim for the ODE position filled by Joshua Ross, and this claim shall proceed to trial.

This case is set for a telephonic status conference at 4 p.m. on June 26, 2013. Parties shall participate in this conference by counsel, who shall call the Court at 317-229-3660. The purpose of this conference is to select dates for the final pretrial conference and trial. The Court will also explore whether a settlement conference would help resolve the case. The evidence shows the lost wage damages on Count 2 are minimal, so there is a valid question as to the extent of damages Plaintiff could presumably recover even if she prevails at trial.

DATED: 05/22/2013

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

11

Copies to:

Lester H. Cohen
DEFUR VORAN LLP
lhcohen15@gmail.com

Paul J. Cummings
HENN LAW FIRM PC
Paul.Cummings@HennLawOnline.com

David M. Henn
HENN LAW FIRM P.C.
david.henn@hennlawonline.com

Shawn A. Neal
DE FUR, VORAN, HANLEY, RADCLIFF & REED, LLP
sneal@defur.com

Scott E. Shockley
DEFUR VORAN LLP
sshockley@defur.com